NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BH 329 NB LLC,<br><br>                Plaintiff,<br><br>v.<br><br>CBRE, INC.,<br><br>                Defendant. | Civil Action No.: 16-cv-8141<br><br>**OPINION** |

**CECCHI, District Judge.**

## I. INTRODUCTION

This matter comes before the Court on the motion of Defendant CBRE, INC. ("Defendant") (ECF No. 7) to dismiss Plaintiff BH 329 NB LLC's ("Plaintiff") Complaint (ECF No. 1, hereafter, "Compl."). The Court has considered the submissions made in support of and in opposition to the instant motion. The motion is decided without oral argument pursuant to Fed. R. Civ. P. 78(b).[1] For the reasons set forth below, Defendant's motion is GRANTED in part and DENIED in part.

The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## II. BACKGROUND

In deciding the pending motion, the Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences in Plaintiff's favor.

This case concerns a prospective sale of commercial real estate (the "Property") that was not consummated. Plaintiff attempted to buy the Property from API Foils, Inc. ("API" or "Seller"),

---

[1] The Court considers any new arguments not presented by the parties to be waived. See Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1298 (3d Cir. 1991).

1

which is not a party to this action. (Compl. ¶¶ 6-7). API hired Defendant as its real estate broker to oversee and manage the sale of the Property. (Id. ¶ 5).

Defendant "marketed the Property extensively, and after a highly competitive process resulting in multiple offers from multiple parties, API indicated its intention to sell the Property to [Plaintiff] in January 2016." (Compl. ¶ 6). On February 10, 2016, Plaintiff signed a letter of intent ("LOI") setting forth the sale's anticipated terms, including a purchase price of $7.5 million and an agreement that API would lease back the property for at least one year. (Id. ¶¶ 7, 11). API signed a materially similar revised version of the LOI on February 18, 2016. (Id. ¶ 11). Both versions of the LOI indicated that the LOI was "not an offer, agreement or commitment, nor is it binding in any way and the parties will not have any liabilities or obligation to each other until and unless each party executes and delivers a mutually acceptable formal and final Contract." (Moskowitz Decl., ECF No. 7-2, Exs. B & C[2] at 4). The LOI also stated that the contract of sale would contain "terms and conditions 'customarily included in contracts for the sale of similar property.'" (Compl. ¶ 12).

At some point before the sale contract was signed, but after Plaintiff and API "formed their agreement in principle," Defendant allegedly "repeatedly assured [Plaintiff] that [Defendant] would not market or otherwise entertain any other offers to purchase the Property, so long as [Plaintiff] continued to agree on the Purchase Price." (Compl. ¶ 8). Plaintiff claims Defendant's assurances caused Plaintiff to believe it had the exclusive right to buy the Property, and thus to spend money on a feasibility analysis and enter into an agreement in principle with a third-party lessee. (Id. ¶¶ 9, 13, 19). In March 2016, API sent Plaintiff a draft contract of sale and draft lease

---

[2] The Court can consider the two versions of the LOI because the Complaint explicitly relies on them. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

2

agreement, which Plaintiff returned with comments and proposed revisions in April 2016. (Id. ¶¶ 14-15). One of Plaintiff's revisions added terms requiring API to comply with certain environmental statutes under New Jersey law, which Plaintiff contends are customary "in contracts for the sale of similar industrial properties throughout New Jersey." (Id. ¶¶ 16-17).

All the while, however, Defendant continued to market the Property, which yielded an offer from a different buyer. (Compl. ¶¶ 21-22). API told Defendant it no longer wanted to sell to Plaintiff. (Id. ¶ 23). In turn, on May 19, 2016, Defendant told Plaintiff that API had rejected Plaintiff's proposed contract revisions regarding environmental compliance and had decided not to sell the Property to Plaintiff. (Id. ¶ 24). API later entered into a contract to sell the Property to the other buyer, closing on October 1, 2016. (Id. ¶ 25).

Plaintiff filed its Complaint in the Superior Court of New Jersey, Law Division: Union County, bringing seven claims: breach of contract (Count One); breach of the implied covenant of good faith and fair dealing (Count Two); promissory estoppel (Count Three); fraud in the inducement (Count Four); negligent misrepresentation (Count Five); tortious interference with a prospective business relation (Count Six); and equitable estoppel (Count Seven). Defendant removed to this Court (ECF No. 1) and moved to dismiss for failure to state a claim (ECF No. 7).

### III. LEGAL STANDARD

For a complaint to survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

3

"Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. "A pleading that offers labels and conclusions will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." Iqbal, 556 U.S. at 678 (internal citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Thus, when reviewing complaints for failure to state a claim, district courts should engage in a two-part analysis: "First, the factual and legal elements of a claim should be separated . . . . Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" See Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

## IV. DISCUSSION

Defendant moves to dismiss all claims for failure to state a claim. The Court discusses each claim in turn. Both parties appear to agree that New Jersey law governs all claims.

As an initial matter, however, the Court notes that it cannot rely on certain materials Defendant has submitted with its motion. These are four emails from February and May 2016, sent to and from people working for Plaintiff, Defendant, and the Seller, concerning the contract negotiations between Plaintiff and the Seller for the purchase of the Property. On a motion to dismiss, the Court cannot consider "matters extraneous to the pleadings" except for "document[s] integral to or explicitly relied upon in the complaint." In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1426 (internal quotation and alteration omitted). A document is integral to the complaint if the claims in the complaint are based on the document, even if it is not explicitly cited. Id. Here, Plaintiff's claims are not based on these e-mails, even if they do concern the same subject

4

matter. Nor are the emails cited in the Complaint. Accordingly, the Court will not consider them at this stage, or further address the parties' arguments that rely on these materials.

A.   **Breach of Contract (Count One)**

The Complaint does not state a claim for breach of contract.

Breach of Contract has four elements: "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." Gordon v. United Continental Holding, Inc., 73 F. Supp. 3d 472, 478 (D.N.J. 2014). Plaintiff contends Defendant—the Seller's broker—indicated orally that it would not "market or otherwise entertain other offers to purchase the Property" in exchange for Plaintiff's promise to buy the Property at the sale price in the LOI, $7.5 million. (Compl. ¶ 28). Plaintiff claims Defendant breached this agreement by continuing to market the Property to other buyers, which resulted in the Seller receiving and accepting a different buyer's offer. (Id.).

The parties agree that, with respect to the sale of the Property, Defendant was the Seller's agent. (Pl.'s Br. at 19; Def.'s Br. at 15). Generally, when an agent enters into a contract on behalf of its disclosed principal, it is the principal, not the agent, who is bound by the contract. African Bio-Botanica, Inc. v. Leiner, 264 N.J. Super. 359, 363-64 (App. Div. 1993). Here, the Seller was Defendant's disclosed principal. See id. at 364 ("If, at the time of a transaction conducted by an agent, the other party thereto has notice that the agent is acting for a principal and of the principal's identity, the principal is a disclosed principal."). Thus, any agreement Defendant made as the Seller's agent is not binding on Defendant, and cannot support a contract claim against it.

Plaintiff contends in opposition that Defendant is liable for breach of contract despite being the Seller's agent because Defendant's agreement not to market the Property was made "outside the scope of its agency[.]" (Pl.'s Br. at 19-20). But the Complaint does not allege Defendant acted

outside the scope of its authority when it promised not to market the Property, and provides no factual basis upon which the Court can determine whether such an allegation would be plausible under the circumstances of this case.³ Therefore, as pleaded, the Complaint does not allege Plaintiff and Defendant entered into a binding contract. Accordingly, this claim must be dismissed.

### B. Breach of the Implied Covenant of Good Faith and Fair Dealing (Count Two)

A claim for breach of the implied covenant of good faith and fair dealing requires the existence of a contract. Wade v. Kessler Inst., 172 N.J. 327, 345 (2002). As explained above, supra Part IV.A, Plaintiff has not adequately pleaded the existence of a contract between Plaintiff and Defendant. Accordingly, this claim must be dismissed.

### C. Promissory Estoppel (Count Three)

The elements of promissory estoppel are: "(1) a clear and definite promise; (2) made with the expectation that the promise will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." Toll Bros., Inc. v. Bd. of Chosen Freeholders of Cty. of Burlington, 194 N.J. 223, 253 (2008). Plaintiff claims (1) Defendant clearly and definitely promised not to market the Property or entertain other offers in exchange for Plaintiff's agreement not to lower its offer price; (2) Defendant should have known Plaintiff would rely on this promise; (3) Plaintiff reasonably relied on this promise by continuing to negotiate with the Seller and make plans to take possession of the Property; and (4) Plaintiff incurred costs and forewent other business opportunities as a result. (Compl. ¶¶ 36-41). Defendant contends this claim should be dismissed because Plaintiff does not allege a clear and definite promise and because Plaintiff's alleged

---

³ Plaintiff argues it need not allege this because Defendant conceded in its papers that it "had no authority to and could not bind itself to refrain from marketing [the] Property." (Pl.'s Br. at 19 (quoting Def.'s Br. at 3)). However, at this stage, the Court is evaluating the sufficiency of the allegations in the Complaint. This fact is not alleged in the Complaint.

6

reliance was unreasonable. (Def.'s Br. at 18-19).

The Complaint adequately pleads both a clear and definite promise and reasonable reliance.[4] First, the promise was clear and definite: Defendant allegedly repeatedly promised not to market the Property or entertain other offers so long as Plaintiff continued to offer $7.5 million as the purchase price, presumably through the consummation of the sale. In effect, Defendant allegedly promised that consummation of the sale was a virtual certainty so long as Plaintiff adhered to that price. See Pop's Cones, Inc. v. Resorts, 307 N.J. Super. 461, 472 (App. Div. 1998) (finding a clear and definite promise when Defendant, a lessor of commercial space, told Plaintiff, a potential lessee, that the contract was "95% there" and to "pack up the [previous location] and start moving" knowing Plaintiff was not renewing its prior lease).

Second, Plaintiff has pleaded reasonable reliance. Whether reliance is reasonable is ordinarily a question of fact. Pop's Cones, Inc., 307 N.J. Super. at 472. Here, Plaintiff allegedly interpreted Defendant's promise, made after Plaintiff and the Seller reached "agreement in principle" for the sale (Compl. ¶ 8), to mean that Plaintiff would not have to worry about other potential buyers while contract negotiations were ongoing, making the consummation of the sale virtually certain. This allegation, if true, makes it plausible that Plaintiff was reasonable in spending money and incurring obligations as though the sale would almost certainly go through.

Defendant argues reliance was unreasonable because the Seller did not agree to exclusive negotiations in the non-binding LOI. (Def.'s Br. at 19; Def.'s Reply Br. at 12-13). But Defendant's alleged promise appears to have been made after the LOI had been signed. It may well have seemed to Plaintiff as though Defendant was representing that the Seller had changed

---

[4] The Court does not discuss the other two elements—that Defendant should have known Plaintiff would rely on the statement and definite, substantial detriment—because Defendant does not challenge the sufficiency of the pleadings to meet either element.

7

its mind, and was now offering exclusivity in exchange for a promise to keep the price at $7.5 million. Therefore, this argument is unavailing.

Accordingly, the Court will not dismiss this claim.

**D.      Fraud in the Inducement (Count Four)**

The Complaint does not state a claim for fraud in the inducement.

Fraud requires "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Allstate New Jersey Ins. Co. v. Lajara, 222 N.J. 129, 147 (2015) (internal quotation omitted). Fraud claims must "be stated with particularity." Fed. R. Civ. P. 9(b). To comply with Rule 9(b), the circumstances surrounding the alleged fraud must be sufficiently pleaded to put the defendant on notice of the "precise misconduct with which [it is] charged." Lum v. Bank of Am., 361 F.3d 217, 223 (3d Cir. 2004), abrogated in part on other grounds by Twombly, 550 U.S. at 557. A plaintiff can meet this requirement by specifying "the who, what, when, where, and how: the first paragraph of any newspaper story." See Advanta Corp. Sec. Litig., 180 F.3d 525, 534 (3d Cir. 1999) (quotation omitted) abrogated on other grounds by Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308 (2007). A plaintiff can either identify "the date, place or time of the fraud," or may use "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." Id. (citations omitted). A plaintiff must allege "who made a misrepresentation to whom and the general content of the misrepresentation." Id. (citations omitted).

Plaintiff's fraud claim is not pleaded with particularity with respect to the alleged material misrepresentation. Although the Complaint alleges Defendant "repeatedly assured [Plaintiff] that [Defendant] would not market or otherwise entertain any other offers to purchase the Property"

8

(Compl. ¶ 8), it does not specify the person(s) working for Defendant who made this representation, the person(s) working for Plaintiff who heard it, when or how many times it was made (other than after the parties "formed their agreement in principle" (Compl. ¶ 8)), where it was made, the means of communication, or any "alternative means of injecting precision and some measure of substantiation." Advanta Corp. Sec. Litig., 180 F.3d at 534. Because Plaintiff presumably received these misrepresentations first-hand through its employees or agents, none of this information would be in Defendant's exclusive control or otherwise inaccessible to Plaintiff.

Accordingly, this claim must be dismissed.

### E. Negligent Misrepresentation (Count Five)

The Complaint does not state a claim for negligent misrepresentation.

Negligent misrepresentation requires pleading "an incorrect statement, negligently made and justifiably relied on, which results in economic loss." Konover Constr. Corp. v. E. Coast Constr. Servs. Corp., 420 F. Supp. 2d 366, 370 (D.N.J. 2006) (quotation omitted). An action for negligent misrepresentation "must be predicated on a statement of present or past fact." Pai v. DRX Urgent Care LLC, Nos. 13-4333, 13-3558, 2014 WL 837158, at *12 (D.N.J. Mar. 4, 2014). "[P]redictions of the future and mere opinion, rather than statements of fact[,]" are thus not actionable as negligent misrepresentation. Alexander v. CIGNA Corp., 991 F. Supp. 427, 440-41 (D.N.J. 1998); accord Pai, 2014 WL 837158, at *12.

Plaintiff's claim is based on the allegation that Defendant negligently misrepresented its then-existing intention to refrain from marketing the Property and entertain other offers. (Compl. ¶ 48). But Plaintiff alleges no facts plausibly giving rise to an inference that this misrepresentation was negligent. The allegation that Defendant subsequently broke its promise may or may not give rise to the inference that Defendant made the promise with no intent of keeping it, but that is an

9

intentional misrepresentation, not a negligent one. Cf. Miller v. Fairchild Indus., Inc., 629 A.2d 1293, 1304 (Md. Ct. Spec. App. 1993) ("[A]ny promise that is made with the present intention not to perform . . . is, perforce, an intentional misrepresentation, not a negligent one, and thus cannot sustain an action for negligent misrepresentation.").[5]

Accordingly, this claim must be dismissed.

### F. Tortious Interference with a Prospective Business Relation (Count Six)

The Complaint does not state a claim for tortious interference.

Tortious interference with a prospective business relation has four elements: (1) a "protectable right—a prospective economic or contractual relationship"; (2) intentional interference with that right; (3) that "the interference caused the loss of the prospective gain"; and (4) "that the injury caused damage." MacDougall v. Weichert, 144 N.J. 380, 404 (1996) (internal citations and quotations omitted). "If an employee or agent is acting on behalf of his or her employer or principal, then no action for tortious interference [against the employee or agent] will lie." DiMaria Constr., Inc. v. Interarch, 351 N.J. Super. 558, 567 (App. Div. 2001).

Here, the prospective business relation alleged is that between Plaintiff and the Seller. (Compl. ¶¶ 51-56). Plaintiff contends it can hold Defendant liable for tortious interference despite Defendant's status as the Seller's agent, because Defendant "acted beyond its authority." (Pl.'s Br. at 24). As discussed above, supra Part IV.A, the Complaint contains no plausible allegation that Defendant exceeded its authority when it promised Plaintiff it would stop marketing the

---

[5] The Court notes it is unclear how Defendant could negligently misrepresent its own intent. Cf. Bennett v. Itochu Int'l, Inc., 682 F. Supp. 2d 469, 480 (E.D. Pa. 2010) ("At the time that a statement is made regarding what the speaker intends to do in the future, the speaker either intends at the moment to take the action he is promising or not. The speaker cannot be negligent as to his future intentions. Therefore, for a claim of negligent misrepresentation there is no exception to the rule that a misrepresentation must be of a present fact and not a future intention[.]").

Property and accepting other offers. Nor does the Complaint contain allegations that Defendant acted outside the scope of its authority in any other way. For this reason, the Court cannot find Plaintiff has adequately pleaded a tortious interference claim against Defendant, the Seller's agent.

Accordingly, this claim must be dismissed.

### G. Equitable Estoppel (Count Seven)

"Equitable estoppel is established where there is conduct that amounts to a misrepresentation of material facts, unknown to the party misled, done with the expectation that the misled party will change his position based on the conduct, and that party in fact changes his position." Rodichok v. Limitorque Corp., No. 95-3528, 1997 WL 392535, at *13 (D.N.J. July 8, 1997) (citing Carlsen v. Masters, Mates & Pilots Pension Plan Tr., 80 N.J. 334, 339 (1979)). "Equitable estoppel can arise from any type of 'conduct of a party, using that word in its broadest meaning as including his spoken or written words[.]'" Royal Assocs. v. Concannon, 200 N.J. Super. 84, 92 (App. Div. 1985) (quoting State v. U.S. Steel Corp., 22 N.J. 341, 358 (1956)). Thus, equitable estoppel "may be invoked when there is conduct, either express or implied, which reasonably misleads another to his prejudice so that a repudiation of such conduct would be unjust in the eyes of the law." Segal v. Lynch, 211 N.J. 230, 254 (2012) (internal quotation omitted). Equitable estoppel and promissory estoppel are "quite similar" besides the latter's requirement of an affirmative promise. Albanese v. Grant, C-284-03, 2005 WL 3092805, at *11 (N.J. App. Div. Nov. 21, 2005).

Plaintiff relies on essentially the same factual allegations for its equitable estoppel claim as its promissory estoppel claim, that is, Defendant repeatedly told Plaintiff it would not market the Property or entertain other bids, knowing Plaintiff would likely act as though it was virtually certain the sale would occur, causing Plaintiff to incur expenses and obligations in preparation for

11

taking possession of the Property. (Compl. ¶¶ 57-61). Because the conduct requirement is very broad and encompasses both words and actions, it is met here by Defendant's alleged repeated assurances. Thus, dismissal of this claim is not warranted.[6]

## V. CONCLUSION

For the reasons above, Defendant's motion to dismiss is GRANTED as to Counts One (breach of contract), Two (breach of the covenant of good faith and fair dealing), Four (fraud in the inducement), Five (negligent misrepresentation), and Six (tortious interference with a prospective business relation), and DENIED as to Counts Three (promissory estoppel) and Seven (equitable estoppel). The Court grants Plaintiff thirty days from the date of this Opinion to file an amended complaint to address the pleading deficiencies described herein.

An appropriate order accompanies this Opinion.

_s/Claire C. Cecchi_
**CLAIRE C. CECCHI, U.S.D.J.**

Dated: August 24, 2017

---

[6] The Court is unpersuaded by Defendant's argument that Plaintiff has failed to identify any rights Defendant should be estopped from asserting. (See Def.'s Br. at 24; Def.'s Reply Br. at 16). Plaintiff's equitable estoppel claim seeks to estop Defendant from reneging on its alleged obligation not to market the Property or entertain other offers, an obligation Plaintiff claims arose due to Defendant's repeated assurances that it would not do so.